UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA
c/o Department of Justice
Washington, D.C. 20530,

                                    *Plaintiff,*

        v.                                              Civil Action No.

JAMES L. DOLAN
c/o The Madison Square Garden Company
Two Penn Plaza
New York, NY 10121

                                    *Defendant.*

## COMPLAINT FOR CIVIL PENALTIES FOR FAILURE TO COMPLY WITH THE PREMERGER REPORTING AND WAITING REQUIREMENTS OF THE HART-SCOTT RODINO ACT

The United States of America, Plaintiff, by its attorneys, acting under the direction of the

Attorney General of the United States and at the request of the Federal Trade Commission,

brings this civil antitrust action to obtain monetary relief in the form of civil penalties against

Defendant James L. Dolan ("Dolan").  Plaintiff alleges as follows:

## NATURE OF THE ACTION

1.      Dolan violated the notice and waiting period requirements of the Hart-Scott-

Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 18a ("HSR Act" or "Act"), with

respect to the acquisition of voting securities of the Madison Square Garden Company ("MSG")

in 2017.

1

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action pursuant to

Section 7A(g) of the Clayton Act, 15 U.S.C. § 18a(g), and pursuant to 28 U.S.C. §§ 1331,

1337(a), 1345, and 1355 and over the Defendant by virtue of Defendant's consent, in the

Stipulation relating hereto, to the maintenance of this action and entry of the Final Judgment in

this District.

3.     Venue is properly based in this District by virtue of Defendant's consent, in the

Stipulation relating hereto, to the maintenance of this action and entry of the Final Judgment in

this District.

## THE DEFENDANT

4.     Defendant Dolan is a natural person with his principal office and place of

business at Two Penn Plaza, New York, NY 10121.  Dolan is engaged in commerce, or in

activities affecting commerce, within the meaning of Section 1 of the Clayton Act, 15 U.S.C. §

12, and Section 7A(a)(1) of the Clayton Act, 15 U.S.C. §18a(a)(1).  At all times relevant to this

complaint, Dolan had sales or assets in excess of $161.5 million.

## OTHER ENTITY

5.     MSG is a corporation organized under the laws of Delaware with its principal

place of business at Two Penn Plaza, New York, NY 10121.  MSG is engaged in commerce, or

in activities affecting commerce, within the meaning of Section 1 of the Clayton Act, 15 U.S.C.

§ 12, and Section 7A(a)(1) of the Clayton Act, 15 U.S.C. §18a(a)(1).  At all times relevant to this

complaint, MSG had sales or assets in excess of $16.6 million.

## THE HART-SCOTT-RODINO ACT AND RULES

6.     The HSR Act requires certain acquiring persons and certain persons whose voting

securities or assets are acquired to file notifications with the Department of Justice and the

Federal Trade Commission (collectively, the "federal antitrust agencies") and to observe a

waiting period before consummating certain acquisitions of voting securities or assets.  15

U.S.C. § 18a(a) and (b).  These notification and waiting period requirements apply to

acquisitions that meet the HSR Act's thresholds, which have been adjusted annually since 2004.

The size of transaction threshold is $50 million, as adjusted ($80.8 million for most of 2017).  In

addition, there is a separate filing requirement for transactions in which the acquirer will hold

voting securities in excess of $100 million, as adjusted ($161.5 million in 2017), and for

transactions in which the acquirer will hold voting securities in excess of $500 million, as

adjusted ($807.5 million in 2017).  With respect to the size of person thresholds, the HSR Act

requires one person involved in the transaction to have sales or assets in excess of $10 million, as

adjusted ($16.6 million in 2017), and the other person to have sales or assets in excess of $100

million, as adjusted ($161.5 million in 2017).

7.     The HSR Act's notification and waiting period requirements are intended to give

the federal antitrust agencies prior notice of, and information about, proposed transactions.  The

waiting period is also intended to provide the federal antitrust agencies with an opportunity to

investigate a proposed transaction and to determine whether to seek an injunction to prevent the

consummation of a transaction that may violate the antitrust laws.

8.      Pursuant to Section (d)(2) of the HSR Act, 15 U.S.C. § 18a(d)(2), rules were promulgated to carry out the purposes of the HSR Act.  16 C.F.R. §§ 801-03 ("HSR Rules"). The HSR Rules, among other things, define terms contained in the HSR Act.

9.      Pursuant to section 801.13(a)(1) of the HSR Rules, 16 C.F.R. § 801.13(a)(1), "all voting securities of [an] issuer which will be held by the acquiring person after the consummation of an acquisition" – including any held before the acquisition – are deemed held "as a result of" the acquisition at issue.

10.     Pursuant to sections 801.13(a)(2) and 801.10(c)(1) of the HSR Rules, 16 C.F.R. § 801.13(a)(2) and § 801.10(c)(1), the value of voting securities already held is the market price, defined to be the lowest closing price within 45 days prior to the subsequent acquisition.

11.     Section 802.21 of the HSR Rules, 16 C.F.R. § 802.21, provides that once a person has filed under the HSR Act and the waiting period has expired, the person can acquire additional voting securities of the issuer without making a new filing for five years from the expiration of the waiting period, so long as the holdings do not exceed a higher threshold than was indicated in the filing.

12.     Section 7A(g)(1) of the Clayton Act, 15 U.S.C. § 18a(g)(1), provides that any person, or any officer, director, or partner thereof, who fails to comply with any provision of the HSR Act is liable to the United States for a civil penalty for each day during which such person is in violation.  Pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, § 701 (further amending the Federal Civil Penalties Inflation Adjustment Act of 1990), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 83 Fed.

Reg. 2902 (January 22, 2018), the maximum amount of civil penalty is currently $41,484 per day.

## DEFENDANT'S PRIOR VIOLATION OF THE HSR ACT

13. On March 10, 2010, Dolan acquired voting securities of Cablevision Systems Corporation ("CVC") that resulted in holdings exceeding the adjusted $50 million threshold then in effect under the HSR Act. Although he was required to do so, Dolan did not file under the HSR Act prior to acquiring CVC voting securities on March 10, 2010.

14. Subsequently, Dolan made additional acquisitions of CVC voting securities such that on November 30, 2010 his holdings exceeded the adjusted $100 million threshold then in effect under the HSR Act. Although he was required to do so, Dolan did not file under the HSR Act prior to making the acquisition of CVC voting securities on November 30, 2010.

15. On February 24, 2012, Dolan made a corrective filing under the HSR Act for the acquisitions of CVC voting securities. In a letter accompanying the corrective filing, Dolan acknowledged that the transactions were reportable under the HSR Act, but asserted that the failure to file and observe the waiting period was inadvertent.

16. On May 4, 2012, the Premerger Notification Office of the Federal Trade Commission sent a letter to Dolan indicating that it would not recommend a civil penalty action regarding the March 10, 2010, and November 30, 2010, CVC acquisitions. The letter advised, however, that Dolan "still must bear responsibility for compliance with the Act" and was "accountable for instituting an effective program to ensure full compliance with the Act's requirements."

5

## DEFENDANT'S VIOLATION OF THE HSR ACT

17.     Dolan is the Executive Chairman and a Director of MSG and, as a result of holding these positions, frequently receives restricted stock units ("RSUs") as a part of his compensation package.  On August 16, 2016, due to vesting RSUs, Dolan filed an HSR Notification for an acquisition of MSG voting securities that would result in holdings exceeding the $50 million threshold as adjusted.  Early termination of the HSR Act's waiting period was granted on this filing on September 6, 2016, and Dolan completed the acquisition three days later.  Dolan was permitted under the HSR Act to acquire additional voting securities of MSG without making another HSR Act filing so long as he did not exceed the $100 million threshold, as adjusted.  As of February 27, 2017, the adjusted $100 million threshold was $161.5 million.

18.     On September 11, 2017, Dolan acquired 591 shares of MSG due to vesting RSUs. As a result of this acquisition, Dolan held voting securities of MSG valued in excess of the $161.5 million threshold then in effect.

19.     Although required to do so, Dolan did not file under the HSR Act or observe the HSR Act's waiting period prior to completing the September 11, 2017, transaction.

20.     On November 24, 2017, Dolan made a corrective filing and the waiting period expired on December 26, 2017.  Dolan was in continuous violation of the HSR Act from September 11, 2017, when he acquired the MSG voting securities valued in excess of the HSR Act's then applicable $100 million filing threshold, as adjusted ($161.5 million), through December 26, 2017, when the waiting period expired on his corrective filing.

## REQUESTED RELIEF

WHEREFORE, Plaintiff requests:

     a.     That the Court adjudge and decree that Defendant's acquisition of MSG voting securities on September 11, 2017, was a violation of the HSR Act, 15 U.S.C. § 18a; and that Defendant was in violation of the HSR Act each day from September 11, 2017, through December 26, 2017;

     b.     That the Court order Defendant to pay to the United States an appropriate civil penalty as provided by the HSR Act, 15 U.S.C. § 18a(g)(1), and the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, § 701 (further amending the Federal Civil Penalties Inflation Adjustment Act of 1990), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 83 Fed. Reg. 2902 (January 22, 2018);

     c.     That the Court order such other and further relief as the Court may deem just and proper; and

     d.     That the Court award Plaintiff its costs of this suit.

Dated: December 6, 2018

FOR THE PLAINTIFF UNITED STATES
OF AMERICA:

Makan Delrahim
D.C. Bar No. 457795
Assistant Attorney General
Department of Justice
Antitrust Division
Washington, D.C.  20530

Roberta S. Baruch
D.C. Bar No. 269266
Special Attorney

Kenneth A. Libby
Special Attorney

Jennifer Lee
Special Attorney

Federal Trade Commission
Washington, D.C. 20580
(202) 326-2694

8

# CIVIL COVER SHEET

JS-44 (Rev. 6/17 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| UNITED STATES OF AMERICA<br>c/o Department of Justice<br>Washington, DC 20530 | JAMES L. DOLAN<br>c/o The Madison square Garden Company<br>Two Penn Plaza<br>New York. NY 10121 |
| **(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** _____<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT 88888<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| **(c) ATTORNEYS** (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br>Kenneth A. Libby,Roberta S. Baruch, Jennifer Lee<br>Department of Justice<br>Washington, DC 20530<br>202-326-2694 | ATTORNEYS (IF KNOWN)<br>Jeffrey P. Gunard, Gary W. Kubek<br>Debevoise & Plimpton LLL<br>801 Pennsylvania Ave., NW<br>Washington, DC 20004 |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- (●) 1 U.S. Government Plaintiff
- ( ) 2 U.S. Government Defendant
- ( ) 3 Federal Question (U.S. Government Not a Party)
- ( ) 4 Diversity (Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE an x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ( ) 1 | ( ) 1 | Incorporated or Principal Place of Business in This State | ( ) 4 | ( ) 4 |
| Citizen of Another State | ( ) 2 | ( ) 2 | Incorporated and Principal Place of Business in Another State | ( ) 5 | ( ) 5 |
| Citizen or Subject of a Foreign Country | ( ) 3 | ( ) 3 | Foreign Nation | ( ) 6 | ( ) 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)

**(●) A. Antitrust**
- [X] 410 Antitrust

**( ) B. Personal Injury/ Malpractice**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Medical Malpractice
- [ ] 365 Product Liability
- [ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Product Liability

**( ) C. Administrative Agency Review**
- [ ] 151 Medicare Act

Social Security
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g)
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

Other Statutes
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

**( ) D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**( ) E. General Civil (Other)       OR       ( ) F. Pro Se General Civil**

Real Property
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent, Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

Personal Property
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

Bankruptcy
- [ ] 422 Appeal 27 USC 158
- [ ] 423 Withdrawal 28 USC 157

Prisoner Petitions
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Conditions
- [ ] 560 Civil Detainee – Conditions of Confinement

Property Rights
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent – Abbreviated New Drug Application
- [ ] 840 Trademark

Federal Tax Suits
- [ ] 870 Taxes (US plaintiff or defendant)
- [ ] 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

Other Statutes
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 430 Banks & Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation

- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions
- [ ] 470 Racketeer Influenced & Corrupt Organization
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/Privacy Act* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |
| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

| ● 1 Original Proceeding | ○ 2 Removed from State Court | ○ 3 Remanded from Appellate Court | ○ 4 Reinstated or Reopened | ○ 5 Transferred from another district (specify) | ○ 6 Multi-district Litigation | ○ 7 Appeal to District Judge from Mag. Judge | ○ 8 Multi-district Litigation – Direct File |
|---|---|---|---|---|---|---|---|

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
15 U.S.C. 18a, action for civil penalties for failure to file premerger notification

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐ | DEMAND $ 609,810<br>JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☐   NO ☒ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐   NO ☒ | If yes, please complete related case form |
|---|---|---|---|

DATE: 12/6/18     SIGNATURE OF ATTORNEY OF RECORD *Kenneth H. Libby*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I.       COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III.     CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

VI.     CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*Plaintiff,*<br><br>v.<br><br>JAMES L. DOLAN<br><br>*Defendant.* | Civil Action No. |

## UNITED STATES' EXPLANATION OF CONSENT DECREE PROCEDURES

The United States submits this short memorandum summarizing the procedures regarding the Court's entry of the proposed Final Judgment. This Judgment would settle this case pursuant to the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b)-(h) (the "APPA"), which applies to civil antitrust cases brought and settled by the United States.

1.  Today, the United States has filed a Complaint and, attached to this Explanation of Consent Decree Procedures, a proposed Final Judgment and a Stipulation between the parties by which they have agreed that the Court may enter the proposed Final Judgment after the United States has complied with the APPA. The United States has also filed a Competitive Impact Statement relating to the proposed Final Judgment.

2.  The Stipulation is a document that has been agreed to by both the United States and the Defendant.

3.  In cases in which the APPA applies, it requires that the United States publish the proposed Final Judgment and the Competitive Impact Statement in the *Federal Register* and

cause to be published a summary of the terms of the proposed Final Judgment and the

Competitive Impact Statement in certain newspapers at least sixty (60) days prior to entry of the

proposed Final Judgment.[1] The Defendant in this matter has agreed to arrange and bear the costs

for the newspaper notices. The notice will inform members of the public that they may submit

comments about the proposed Final Judgment to the United States Department of Justice,

Antitrust Division, 15 U.S.C. § 16(b)-(c).

4.   During the sixty-day period, the United States will consider, and at the close of that

period respond to, any comments that it has received, and it will publish the comments and the

United States' responses in the *Federal Register.*

5.   After the expiration of the sixty-day period, the United States will file with the Court

the comments and the United States' responses, and it may ask the Court to enter the proposed

Final Judgment (unless the United States has decided to withdraw its consent to entry of the

Final Judgment, as permitted by Paragraph (1) of the Stipulation, *see* 15 U.S.C. § 16(d)).

6.   If the United States requests that the Court enter the proposed Final Judgment after

compliance with the APPA, 15 U.S.C. § 16(e)-(f), then the Court may enter the Final Judgment

without a hearing, provided that it concludes that the Final Judgment is in the public interest.

---

[1] A court in this district recently held that the APPA applies to settlements for civil penalties in cases brought under Section 7A of the Clayton Act, 15 U.S.C. § 18a, commonly known as the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (the "HSR Act").  *See United States v. Blavatnik*, No. 1:15-cv-01631-RDM (D.D.C. Feb. 12, 2016) (order denying entry of final judgment) (Moss, J.). Prior to *Blavatnik*, courts in this district had entered judgments in civil penalty cases under the HSR Act in forty-seven cases without applying the APPA.  *See, e.g., United States v. Berkshire Hathaway Inc.*, 2014-2 Trade Cas. (CCH) ¶ 78,870 (D.D.C. Aug. 20, 2014) (Howell, J.); *United States v. Diller*, 2013-1 Trade Cas. (CCH) ¶ 78,446 (D.D.C. July 3, 2013) (Kessler, J.); *United States v. MacAndrews & Forbes Holdings Inc.*, 2013-1 Trade Cas. (CCH) ¶ 78,443 (D.D.C. July 1, 2013) (Jackson, J.); *United States v. Biglari Holdings, Inc.*, 2013-1 Trade Cas. (CCH) ¶ 78,409 (D.D.C. May 30, 2013) (Leon, J.); *United States v. Roberts*, 2011-2 Trade Cas. (CCH) ¶ 77,742 (D.D.C. Dec. 28, 2011) (Kollar-Kotelly, J.); *United States v. Smithfield Foods, Inc.*, 2010-1 Trade Cas. (CCH) ¶ 76,880 (D.D.C. Jan. 25, 2010) (Huvelle, J.); *United States v. Malone*, 2009-1 Trade Cas. (CCH) ¶ 76,659 (D.D.C. Jun. 25, 2009) (Kennedy, J.). Although the United States takes no position as

Dated:  December 6, 2018                                    Respectfully submitted,


                                                           /s/ Kenneth A. Libby
                                                           Kenneth A. Libby
                                                           Roberta S. Baruch
                                                           D.C. Bar No. 269266
                                                           Jennifer Lee
                                                           Special Attorneys
                                                           U.S. Department of Justice
                                                           Antitrust Division
                                                           c/o Federal Trade Commission
                                                           600 Pennsylvania Avenue, NW
                                                           Washington, DC 20580
                                                           Phone: (202) 326-2694
                                                           Email: klibby@ftc.gov

---

to whether *Blavatnik* was correctly decided, in light of the court's opinion, the United States has elected to follow the APPA procedures in this case.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

Plaintiff,

v.

JAMES L. DOLAN

Defendant.

Civil Action No.

### STIPULATION

It is stipulated by and between the undersigned parties, by their respective attorneys, that:

(1)  The parties stipulate that a Final Judgment in the form attached to this Stipulation may be filed with and entered by the Court, on the Court's own motion or on the motion of any party at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act ("APPA") (15 U.S.C. § 16), and without further notice to any party or other proceedings, if Plaintiff has not withdrawn its consent, which it may do at any time before the entry of judgment by serving notice of its withdrawal on Defendant and filing that notice with the Court;

(2)  Defendant waives any objection to venue or jurisdiction for purposes of this action and authorizes Debevoise & Plimpton LLP to accept service of all process in this matter on his behalf;

(3)  Defendant agrees to arrange, at his expense, publication of the newspaper notice required by the APPA, which shall be drafted by the United States in its sole discretion.  The

1

publication shall be arranged no later than five (5) business days after Defendant's receipt from the United States of the text of the notice and the identity of the newspaper within which the publication shall be made. Defendant shall promptly send to the United States (1) confirmation that publication of the newspaper notice has been arranged, and (2) the certification of the publication prepared by the newspaper within which the notice was published;

(4) This Stipulation shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court;

(5) In the event Plaintiff withdraws its consent or if the proposed Final Judgment is not entered pursuant to this Stipulation, and the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, then this Stipulation shall be of no effect whatever and the making of this Stipulation shall be without prejudice to any party in this or any other proceeding;

(6) The Defendant represents that the actions he is required to perform pursuant to the proposed Final Judgment can and will be performed, and that the Defendant will later raise no claim of mistake, hardship, or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein; and

(7) The entry of the Final Judgment in accordance with this Stipulation settles, discharges, and releases any and all claims of Plaintiff for civil penalties pursuant to Section 7A(g)(1) of the Clayton Act, 15 U.S.C. § 18a(g)(1), against Defendant for failure to comply with Section 7A of the Clayton Act, 15 U.S.C. § 18a, in connection with Defendant's acquisitions of voting securities of the Madison Square Garden Company in September 2017.

FOR THE DEFENDANT:

James L. Dolan

By: _____
Jeffrey P. Cunard
D.C. Bar No. 362477
Debevoise & Plimpton LLP
801 Pennsylvania Ave., NW
Washington, D.C.  20004


_____
Gary W. Kubek
Debevoise & Plimpton
919 Third Avenue
New York, NY  10022

Counsel for Defendant James L. Dolan

Dated: October 3, 2018

FOR THE PLAINTIFF:

Makan Delrahim
D.C. Bar No. 457795
Assistant Attorney General
Department of Justice
Antitrust Division
Washington, D.C.  20530
(202) 514-2401

D. Bruce Hoffman
D.C. Bar No. 495385
Acting Director
Bureau of Competition
Federal Trade Commission
Washington, D.C. 20580
(202) 326-3070

Marian Bruno
D.C. Bar No. 414126
Deputy Director

Roberta S. Baruch
D.C. Bar No. 269266
Acting Assistant Director

Kenneth A. Libby
Attorney
(202) 326-2694

Jennifer Lee
Attorney

4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>*Plaintiff*,<br><br>v.<br><br>JAMES L. DOLAN<br><br>*Defendant*. | Civil Action No. |

## [PROPOSED] FINAL JUDGMENT

Plaintiff, the United States of America, having commenced this action by filing its

Complaint herein for violation of Section 7A of the Clayton Act, 15 U.S.C. § 18a, commonly

known as the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and Plaintiff and

Defendant James L. Dolan, by their respective attorneys, having consented to the entry of this

Final Judgment without trial or adjudication of any issue of fact or law herein, and without this

Final Judgment constituting any evidence against or an admission by the Defendant with respect

to any such issue:

NOW, THEREFORE, before the taking of any testimony and without trial or

adjudication of any issue of fact or law herein, and upon the consent of the parties hereto, it is

hereby

ORDERED, ADJUDGED, AND DECREED:

## I.

The Court has jurisdiction of the subject matter of this action and of the Plaintiff and the Defendant.  The Complaint states a claim upon which relief can be granted against the Defendant under Section 7A of the Clayton Act, 15 U.S.C. § 18a.

## II.

Judgment is hereby entered in this matter in favor of Plaintiff and against Defendant, and, pursuant to Section 7A(g)(1) of the Clayton Act, 15 U.S.C. § 18a(g)(1), the Debt Collection Improvement Act of 1996, Pub. L. 104-134 § 31001(s) (amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461), the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74 § 701 (further amending the Federal Civil Penalties Inflation Adjustment Act of 1990), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 82 Fed. Reg. 8135 (January 24, 2017), Defendant is hereby ordered to pay a civil penalty in the amount of six hundred nine thousand eight hundred and ten dollars ($609,810). Payment of the civil penalty ordered hereby shall be made by wire transfer of funds or cashier's check.  If the payment is made by wire transfer, Defendant shall contact Janie Ingalls of the Antitrust Division's Antitrust Documents Group at (202) 514-2481 for instructions before making the transfer.  If the payment is made by cashier's check, the check shall be made payable to the United States Department of Justice and delivered to:

Janie Ingalls
United States Department of Justice
Antitrust Division, Antitrust Documents Group
450 5th Street, NW
Suite 1024
Washington, D.C.  20530

Defendant shall pay the full amount of the civil penalty within thirty (30) days of entry of this Final Judgment.  In the event of a default or delay in payment, interest at the rate of eighteen (18) percent per annum shall accrue thereon from the date of the default or delay to the date of payment.

III.

Each party shall bear its own costs of this action.

IV.

This Final Judgment shall expire upon payment in full by the Defendant of the civil penalty required by Section II of this Final Judgment.

V.

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

3

Dated: _____


                                        _____
                                        United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*Plaintiff*,<br><br>v.<br><br>JAMES L. DOLAN<br><br>*Defendant*. | Civil Action No. |

## COMPETITIVE IMPACT STATEMENT

Plaintiff United States of America ("United States"), pursuant to Section 2(b) of the

Antitrust Procedures and Penalties Act ("APPA"), 15 U.S.C. § 16(b)-(h), files this Competitive

Impact Statement relating to the proposed Final Judgment submitted for entry in this civil

antitrust proceeding.

## I.      NATURE AND PURPOSE OF THE PROCEEDING

On December 6,2018, the United States filed a Complaint against Defendant James L.

Dolan ("Dolan"), related to Dolan's acquisitions of voting securities of the Madison Square

Garden Company ("MSG") in September 2017.  The Complaint alleges that Dolan violated

Section 7A of the Clayton Act, 15 U.S.C. § 18a, commonly known as the Hart-Scott-Rodino

Antitrust Improvements Act of 1976 (the "HSR Act").  The HSR Act provides that "no person

shall acquire, directly or indirectly, any voting securities of any person" exceeding certain

thresholds until that person has filed pre-acquisition notification and report forms with the

Department of Justice and the Federal Trade Commission (collectively, the "federal antitrust

agencies" or "agencies") and the post-filing waiting period has expired. 15 U.S.C. § 18a(a).  A

1

key purpose of the notification and waiting period requirements is to protect consumers and competition from potentially anticompetitive transactions by providing the agencies an opportunity to conduct an antitrust review of proposed transactions before they are consummated.

The Complaint alleges that Dolan acquired voting securities of MSG in excess of then-applicable statutory threshold ($161.5 million at the time of acquisition) without making the required pre-acquisition HSR Act filings with the agencies and without observing the waiting period, and that Dolan and MSG met the applicable statutory size of person thresholds.

At the same time the Complaint was filed in the present action, the United States also filed a Stipulation and proposed Final Judgment that eliminates the need for a trial in this case. The proposed Final Judgment is designed to address the violation alleged in the Complaint and deter Dolan's HSR Act violations.  Under the proposed Final Judgment, Dolan must pay a civil penalty to the United States in the amount of $609,810.

The United States and the Defendant have stipulated that the proposed Final Judgment may be entered after compliance with the APPA, unless the United States first withdraws its consent.  Entry of the proposed Final Judgment would terminate this case, except that the Court would retain jurisdiction to construe, modify, or enforce the provisions of the proposed Final Judgment and punish violations thereof.

## II.     DESCRIPTION OF THE EVENTS GIVING RISE TO THE ALLEGED VIOLATION

Dolan is the Executive Chairman and a Director of MSG and an investor.  At all times relevant to the Complaint, Dolan had sales or assets in excess of $161.5 million.  At all times relevant to the Complaint, MSG had sales or assets in excess of $16.6 million.

In his roles as Executive Chairman and Director of MSG, Dolan frequently receives restricted stock units ("RSUs") as a part of his compensation package.  On August 16, 2016, due to the imminent vesting of RSUs, Dolan made an HSR filing for an acquisition of MSG voting securities that would result in holdings exceeding the adjusted $50 million threshold then in effect.  The Premerger Notification Office granted early termination on this filing on September 6, 2016, and Dolan completed the acquisition three days later.  For a period of five years, Dolan was permitted under the HSR Act to acquire additional voting securities of MSG without making another HSR Act filing so long as he did not exceed the $100 million threshold, as adjusted.  As of February 27, 2017, the adjusted $100 million threshold was $161.5 million.

On September 11, 2017, Dolan acquired 591 shares of MSG due to vesting RSUs.  As a result of this acquisition, Dolan held voting securities of MSG valued in excess of the $161.5 million threshold then in effect.  Although he was required to do so, Dolan did not file under the HSR Act or observe the HSR Act's waiting period prior to completing the September 11, 2017, transaction.

Dolan made a corrective HSR Act filing on November 27, 2017, after learning that this acquisition was subject to the HSR Act's requirements and that he was obligated to file.  The waiting period for that corrective filing expired on December 26, 2017.

The Complaint further alleges that Dolan's September 2017 HSR Act violation was not the first time Dolan had failed to observe the HSR Act's notification and waiting period requirements.  On March 10, 2010, Dolan acquired voting securities of Cablevision Systems Corporation ("CVC") that resulted in holdings exceeding the adjusted $50 million threshold then in effect under the HSR Act.  Although he was required to do so, Dolan did not file under the HSR Act prior to acquiring CVC voting securities on March 10, 2010.  Subsequently, Dolan

made additional acquisitions of CVC voting securities such that on November 30, 2010 his holdings exceeded the adjusted $100 million threshold then in effect under the HSR Act. Although he was required to do so, Dolan did not file under the HSR Act prior to making the acquisition of CVC voting securities on November 30, 2010.  On February 24, 2012, Dolan made a corrective filing under the HSR Act for the acquisitions of CVC voting securities, and explained in a letter accompanying the corrective filing that his failure to file was inadvertent. On May 4, 2012, the Premerger Notification Office of the Federal Trade Commission notified Dolan by letter that it would not recommend a civil penalty for the violations, but advised Dolan that he was "accountable for instituting an effective program to ensure full compliance with the Act's requirements."

## III.    EXPLANATION OF THE PROPOSED FINAL JUDGMENT

The proposed Final Judgment imposes a $609,810 civil penalty designed to address the violation alleged in the Complaint and deter the Defendant and others from violating the HSR Act.  The United States adjusted the penalty downward from the maximum permitted under the HSR Act because the violation was inadvertent, the Defendant promptly self-reported the violation after discovery, and the Defendant is willing to resolve the matter by consent decree and avoid prolonged investigation and litigation.  The relief will have a beneficial effect on competition because the agencies will be properly notified of future acquisitions, in accordance with the law.  At the same time, the penalty will not have any adverse effect on competition.

## IV.    REMEDIES AVAILABLE TO POTENTIAL PRIVATE LITIGANTS

There is no private antitrust action for HSR Act violations; therefore, entry of the proposed Final Judgment will neither impair nor assist the bringing of any private antitrust action.

## V.    PROCEDURES AVAILABLE FOR MODIFICATION OF THE PROPOSED FINAL JUDGMENT

The United States and the Defendant have stipulated that the proposed Final Judgment may be entered by the Court after compliance with the provisions of the APPA, provided that the United States has not withdrawn its consent.  The APPA conditions entry upon the Court's determination that the proposed Final Judgment is in the public interest.

The APPA provides a period of at least sixty (60) days preceding the effective date of the proposed Final Judgment within which any person may submit to the United States written comments regarding the proposed Final Judgment.  Any person who wishes to comment should do so within sixty (60) days of the date of publication of this Competitive Impact Statement in the *Federal Register*, or the last date of publication in a newspaper of the summary of this Competitive Impact Statement, whichever is later.  All comments received during this period will be considered by the United States Department of Justice, which remains free to withdraw its consent to the proposed Final Judgment at any time prior to the Court's entry of judgment.  The comments and the response of the United States will be filed with the Court.  In addition, comments will be posted on the U.S. Department of Justice, Antitrust Division's internet website and, under certain circumstances, published in the *Federal Register*.  Written comments should be submitted to:

Roberta S. Baruch
Special Attorney, United States
c/o Federal Trade Commission
600 Pennsylvania Avenue, NW
CC-8407
Washington, DC 20580
Email:  rbaruch@ftc.gov

The proposed Final Judgment provides that the Court retains jurisdiction over this action, and the parties may apply to the Court for any order necessary or appropriate for the modification, interpretation, or enforcement of the Final Judgment.

## VI.  ALTERNATIVES TO THE PROPOSED FINAL JUDGMENT

The United States considered, as an alternative to the proposed Final Judgment, a full trial on the merits against the Defendant.  The United States is satisfied, however, that the proposed relief is an appropriate remedy in this matter.  Given the facts of this case, including the Defendant's self-reporting of the violation and willingness to promptly settle this matter, the United States is satisfied that the proposed civil penalty is sufficient to address the violation alleged in the Complaint and to deter violations by similarly situated entities in the future, without the time, expense, and uncertainty of a full trial on the merits.

## VII.  STANDARD OF REVIEW UNDER THE APPA FOR THE PROPOSED FINAL JUDGMENT

The Clayton Act, as amended by the APPA, requires that proposed consent judgments in antitrust cases brought by the United States be subject to a 60-day comment period, after which the court shall determine whether entry of the proposed Final Judgment "is in the public interest."  15 U.S.C. § 16(e)(1).  In making that determination, the court, in accordance with the statute as amended in 2004, is required to consider:

(A)     the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually

6

considered, whether its terms are ambiguous, and any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest; and

(B)      the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.

15 U.S.C. § 16(e)(1)(A) & (B).  In considering these statutory factors, the court's inquiry is necessarily a limited one as the government is entitled to "broad discretion to settle with the defendant within the reaches of the public interest."  *United States v. Microsoft Corp.*, 56 F.3d 1448, 1461 (D.C. Cir. 1995); *see generally United States v. SBC Commc'ns, Inc.*, 489 F. Supp. 2d 1 (D.D.C. 2007) (assessing public interest standard under the Tunney Act); *United States v. U.S. Airways Group, Inc.*, 38 F. Supp. 3d 69, 75 (D.D.C. 2014) (explaining that the "court's inquiry is limited" in Tunney Act settlements); *United States v. InBev N.V./S.A.*, No. 08-1965 (JR), 2009 U.S. Dist. LEXIS 84787, at *3 (D.D.C. Aug. 11, 2009) (noting that the court's review of a consent judgment is limited and only inquires "into whether the government's determination that the proposed remedies will cure the antitrust violations alleged in the complaint was reasonable, and whether the mechanism to enforce the final judgment are clear and manageable").

As the United States Court of Appeals for the District of Columbia Circuit has held, under the APPA a court considers, among other things, the relationship between the remedy secured and the specific allegations in the government's complaint, whether the decree is sufficiently clear, whether its enforcement mechanisms are sufficient, and whether the decree may positively harm third parties.  *See Microsoft*, 56 F.3d at 1458-62.  With respect to the adequacy of the relief secured by the decree, a court may not "engage in an unrestricted

evaluation of what relief would best serve the public." *United States v. BNS, Inc.*, 858 F.2d 456, 462 (9th Cir. 1988) (quoting *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981)); *see also Microsoft*, 56 F.3d at 1460-62; *United States v. Alcoa, Inc.*, 152 F. Supp. 2d 37, 40 (D.D.C. 2001); *InBev*, 2009 U.S. Dist. LEXIS 84787, at *3. Instead:

> [t]he balancing of competing social and political interests affected by a proposed antitrust consent decree must be left, in the first instance, to the discretion of the Attorney General. The court's role in protecting the public interest is one of insuring that the government has not breached its duty to the public in consenting to the decree. The court is required to determine not whether a particular decree is the one that will best serve society, but whether the settlement is "*within the reaches of the public interest*." More elaborate requirements might undermine the effectiveness of antitrust enforcement by consent decree.

*Bechtel*, 648 F.2d at 666 (emphasis added) (citations omitted).[1]

In determining whether a proposed settlement is in the public interest, a district court "must accord deference to the government's predictions about the efficacy of its remedies, and may not require that the remedies perfectly match the alleged violations." *SBC Commc'ns*, 489 F. Supp. 2d at 17; *see also U.S. Airways*, 38 F. Supp. 3d at 74-75 (noting that a court should not reject the proposed remedies because it believes others are preferable and that room must be made for the government to grant concessions in the negotiation process for settlements); *Microsoft*, 56 F.3d at 1461 (noting the need for courts to be "deferential to the government's predictions as to the effect of the proposed remedies"); *United States v. Archer-Daniels-Midland Co.*, 272 F. Supp. 2d 1, 6 (D.D.C. 2003) (noting that the court should grant "due respect to the government's prediction as to the effect of proposed remedies, its perception of the market structure, and its views of the nature of the case"). The ultimate question is whether "the

---

[1] *See also BNS*, 858 F.2d at 464 (holding that the court's "ultimate authority under the [APPA] is limited to approving or disapproving the consent decree"); *United States v. Gillette Co.*, 406 F. Supp. 713, 716 (D. Mass. 1975) (noting that, in this way, the court is constrained to "look at the overall picture not hypercritically, nor with a microscope, but with an artist's reducing glass").

remedies [obtained in the decree are] so inconsonant with the allegations charged as to fall outside of the 'reaches of the public interest.'" *Microsoft*, 56 F.3d at 1461 (*quoting United States v. Western Elec. Co.*, 900 F.2d 283, 309 (D.C. Cir. 1990)).  To meet this standard, the United States "need only provide a factual basis for concluding that the settlements are reasonably adequate remedies for the alleged harms." *SBC Commc'ns*, 489 F. Supp. 2d at 17.

Moreover, the court's role under the APPA is limited to reviewing the remedy in relationship to the violations that the United States has alleged in its complaint, and does not authorize the court to "construct [its] own hypothetical case and then evaluate the decree against that case." *Microsoft*, 56 F.3d at 1459; *see also U.S. Airways*, 38 F. Supp. 3d at 75 (noting that the court must simply determine whether there is a factual foundation for the government's decisions such that its conclusions regarding the proposed settlements are reasonable); *InBev*, 2009 U.S. Dist. LEXIS 84787, at *20 ("the 'public interest' is not to be measured by comparing the violations alleged in the complaint against those the court believes could have, or even should have, been alleged").  Because the "court's authority to review the decree depends entirely on the government's exercising its prosecutorial discretion by bringing a case in the first place," it follows that "the court is only authorized to review the decree itself," and not to "effectively redraft the complaint" to inquire into other matters that the United States did not pursue.  *Microsoft*, 56 F.3d at 1459-60.  As a court in this district confirmed in *SBC Communications*, courts "cannot look beyond the complaint in making the public interest determination unless the complaint is drafted so narrowly as to make a mockery of judicial power." *SBC Commc'ns*, 489 F. Supp. 2d at 15.

In its 2004 amendments,[2] Congress made clear its intent to preserve the practical benefits of utilizing consent decrees in antitrust enforcement, adding the unambiguous instruction that "[n]othing in this section shall be construed to require the court to conduct an evidentiary hearing or to require the court to permit anyone to intervene."  15 U.S.C. § 16(e)(2); *see also U.S. Airways*, 38 F. Supp. 3d at 76 (indicating that a court is not required to hold an evidentiary hearing or to permit intervenors as part of its review under the Tunney Act).  This language explicitly wrote into the statute what Congress intended when it first enacted the Tunney Act in 1974.  As Senator Tunney explained:  "[t]he court is nowhere compelled to go to trial or to engage in extended proceedings which might have the effect of vitiating the benefits of prompt and less costly settlement through the consent decree process."  119 Cong. Rec. 24,598 (1973) (statement of Sen. Tunney).  Rather, the procedure for the public interest determination is left to the discretion of the court, with the recognition that the court's "scope of review remains sharply proscribed by precedent and the nature of Tunney Act proceedings."  *SBC Commc'ns*, 489 F. Supp. 2d at 11.  A court can make its public interest determination based on the competitive impact statement and response to public comments alone.  *U.S. Airways*, 38 F. Supp. 3d at 76.  *See also United States v. Enova Corp.*, 107 F. Supp. 2d 10, 17 (D.D.C. 2000) (noting that the "Tunney Act expressly allows the court to make its public interest determination on the basis of the competitive impact statement and response to comments alone"); S. Rep. No. 93-298 93d Cong., 1st Sess., at 6 (1973) ("Where the public interest can be meaningfully evaluated simply on the basis of briefs and oral arguments, that is the approach that should be utilized.").

---

[2] The 2004 amendments substituted "shall" for "may" in directing relevant factors for a court to consider and amended the list of factors to focus on competitive considerations and to address potentially ambiguous judgment terms.  *Compare* 15 U.S.C. § 16(e) (2004), *with* 15 U.S.C. § 16(e)(1) (2006); *see also SBC Commc'ns,* 489 F. Supp. 2d at 11 (concluding that the 2004 amendments "effected minimal changes" to Tunney Act review).

## VIII.  DETERMINATIVE DOCUMENTS

There are no determinative materials or documents within the meaning of the APPA that were considered by the United States in formulating the proposed Final Judgment.

Date: December 6, 2018                    Respectfully submitted,


                                          /s/ Kenneth A. Libby
                                          Kenneth A. Libby
                                          Special Attorney
                                          U.S. Department of Justice
                                          Antitrust Division
                                          c/o Federal Trade Commission
                                          600 Pennsylvania Avenue, NW
                                          Washington, DC 20580
                                          Phone: (202) 326-2694
                                          Email: klibby@ftc.gov